al. Good morning. If it pleases the Court, my name is Robert Stock, and I represent the appellants Bill South, Jerry Blackburn, and Gus Fraga. This is a case where we're seeking reversal of the denial of a petition to compel arbitration. Our clients have a relationship with U.S. Health Group and various of its subsidiaries going back until 2006. That relationship involved participation in a stock incentive plan promulgated by U.S. Health. In 2011, I believe that the penumbra of federal law is broader than that of state law, especially as it relates to equitable estoppel and the whipsawing of inconsistent decisions. And Texas state law is very clear that if, in the agreement, it doesn't preclude the application of federal law, then Texas law and federal law will control. And given the additional benefits conferred under federal law in favor of the broad policy favoring arbitration, I believe that the application of federal law certainly assists the argument that arbitration should be compelled. However, under Texas law, I believe that the same result should also be achieved. Thank you. Essentially, what happened was sometime in 2011, U.S. Health Group decided to allocate our clients as independent salesmen into another of its subsidiaries called SBIA, Small Business Advisors, and they operated under the SBIA for approximately a year and continued to participate in the employee benefit plan. Then U.S. Health made a strategic decision, what we consider to have been based upon fraudulent circumstances, to sever their relationship with our clients, and that, according to U.S. Health, triggered a buyback of the stock option incentive plan. Our clients basically had invested their life's labor in furtherance of their relationship with U.S. Health because they believed that the stock option was going to provide for their retirement. Counsel, does this have anything to do with our case? I thought the case was simply whether or not you were entitled to arbitration. That's correct. That's all before us now. That's correct, Judge. How did UnitedHealth agree to arbitrate? Well, UnitedHealth is part of a, is an insurance holding company, and as an insurance holding company, they have control over various subsidiaries, the marketing subsidiary, as well as various other subsidiaries that provide insurance products. And they agreed to arbitrate because they obtained the benefits from... They agreed to arbitrate. Yes, well, they didn't sign a piece of paper agreeing to arbitrate, but they derived the benefits from an agreement to arbitrate that our clients entered into with U.S. Health. They simply demanded arbitration, which you did not agree to do, and that was the end of it for, what, a year or two? Well... So where is that an agreement on their part? No, first of all, they expressly agreed to arbitrate. In fact, they demanded arbitration. Oh, they did? They expressly agreed to? Yes, they did. Where is it? Tell me more about that. They sent a demand. After the mediation failed, they sent a demand, and they said the demand is on behalf of SBIA and U.S. Health Group and any and all of its subsidiaries. And in fact, they said, if we don't agree to arbitrate, then we're going to be subject to sanctions. You're saying that SBIA and UnitedHealth both did agree to have their dispute arbitrated? They demanded it. They didn't only agree to it. They said, if we don't arbitrate, they're going to seek sanctions against us. So they more than agreed to it. But you didn't accept that demand, so that's the end of that. I mean, that's essentially an unaccepted offer. No, we did accept the demand, because instead of taking them to state court, we arbitrated. You arbitrated against one party, and then they went to... When U.S. Health went to court, that's when you... And then after the arbitration panel... But we asked for damages based upon the stock redemption. And the panel found that U.S. Health was a necessary party, so we amended the demand to include U.S. Health. And if you look at the complaint that was filed below by U.S. Health, it's totally pretextual. It essentially consists entirely of an affirmative defense as to why the damage component of the U.S. Health's decision to terminate the stock incentive plan... Okay, but that's a separate question. Whether they can ultimately win on their complaint against you in federal district court is separate from whether it should be arbitrated, right? We're not here to have a 12-B-6. No, no. That's not... The contrived nature of the claim merely points out U.S. Health's attempt to derail the arbitration. At all times... Well, U.S. Health doesn't want to be a part of the arbitration. They want to decide these disputes about these agents in Florida in court. Right. Well, at all times, the appellants claim damages by virtue of SBIA's wrongful termination and the loss of value of the stock under the employee incentive plan. And subsequently, they amended their pleadings based upon the arbitrator's finding that U.S. Health was a necessary party to the arbitration. And under Texas law and law generally, when you amend a pleading, it relates back to the original demand. And so U.S. Health clearly is a party to the underlying arbitration for any and all purposes. So if you ask me when they agreed to arbitrate, if you look at the arbitration agreement, it includes not only the independent marketing organization, but includes any and all agreements relating to that agreement, any and all disputes arising from that agreement. It's very, very broad and encompassing. But they didn't sign that. No, they didn't sign it, but they were at all times a wholly owned subsidiary of U.S. Health. And the majority of our clients' claim for damages relies upon the stock option. And when we filed the counterclaim in federal court, because the matter was not stayed. Do you have a case that holds that where a subsidiary agrees to arbitrate, it is binding on the principal? Well, if the subsidiary and the principal are under common control, there's an alter ego argument, essentially. Which the district court rejected and which you would have to show was false or wrong by clear and convincing evidence. I mean, you'd have to show it was clearly wrong factually. And I don't know that you can do that, so. Well, also there's a direct benefits estoppel argument, which I think is the most persuasive one. The direct benefits estoppel argument, for instance, in car versus main car development, which is a Texas case, a 337 Southwest 3rd 489, that a non-signatory could be compelled to arbitrate under a Texas contract principles where that non-signatory derived direct benefits from the contract. And that is not an isolated- If they're seeking direct benefits under the contract, if what their claims are, they're seeking direct benefits, what is US Health seeking that's under the contract that it's not a part to? Well, it's very, very simple. They're seeking that they had the right to terminate the EIP, the employee incentive plan, and to buy back the stock at a substantially discounted price. And since that time, the stock has risen dramatically in value. So they did receive a direct benefit. By virtue of SBIA's action, US Health was able to obtain the benefit of the right to buy back the stock. Having obtained that benefit, they can't- and having caused our clients very substantial damages arising out of their relationship with SBIA, they can't claim that they shouldn't be obligated to arbitrate. So the direct benefits estoppel argument is also in Kellogg, Brown, and Root. There's another case where the direct benefits estoppel argument was found to be a part of Texas law. In Reed, Wheatley, Holmes is another case. If liability arises from the contract or must be determined by reference to it, in other words, must be determined by the rights under the EIP, then US Health has to arbitrate. In addition, both US Health and SBIA engaged in wrongful concerted conduct. We believe that determination was in fact wrongful, that our clients were given uncompetitive products with an intent to drive down their productivity to an extent that would allow them to be terminated so that US Health could buy back the stock. So under equitable estoppel, US Health should be compelled to arbitrate. So there are a number of doctrinal reasons, and the most practical reason is if the federal court determined that our clients weren't entitled to the ownership of the stock in the first place, and the arbitration panel determined that our clients were damaged by virtue of the buyback, we'd have irreconcilable inconsistent verdicts and it would render the whole arbitration process nugatory. So for that reason, courts generally, in circumstances such as this, require a non-signatory to arbitrate. And that's essentially our position. And also under the Walter Ego theory, this is a very unique type of a company. It's a holding company under the Texas statutes providing for insurance holding companies. US Health Group conducts no business whatsoever of its own. It just manages and directs the various subsidiaries to underwrite different types of insurance and to market that insurance and promulgates this employee incentive plan. If US Health Group were not required to arbitrate, essentially it would allow them to escape all of the damages caused by their wrongful termination and triggering their right to buy back the stock. So for all of those reasons— Well, I mean, you can still—you can argue in district court. It's a perfectly fine— No, the judge dismissed our counterclaim. He said that because of the arbitration, those claims should be brought in arbitration. So basically a decision of the district court judge was attempting to spit and whistle at the same time. On the one hand, he said, well, you know, you're not a signatory, and therefore the arbitration—a demand to arbitrate is simply a post hoc effort to escape litigation. On the other hand, when we said we want to litigate, he said, no, that belongs in arbitration. So we're kind of caught between the sword and the wall. Can you appeal that still? Excuse me? Is that eligible for appeal? Or did you choose not to appeal that because you wanted to try to push for the arbitration? Well, I don't think a denial of a motion to dismiss—I mean, is ground—is appealable. But at some point, if you have a defense that you weren't allowed to raise— You know, the whole purpose of arbitration is to have a quick, expedient resolution of a claim. Yeah, but you can't—if somebody's not a party and not a direct benefits to stock all that, the fact that it'd be much more convenient to have them in arbitration isn't a basis to put them in arbitration. I agree with you. And that is the United States Constitution, which gives people a right to go to court. They can agree to arbitrate, but they can't be forced into it without agreement. I agree with you. But here, the direct benefits to stock argument is very, very clear, and it's obvious. And it's so obvious that U.S. Health Group recognized it, and that's why they demanded that the claims be brought in arbitration. So, this is just simply a tactical maneuver, and it's something that's—it's a thinly veiled effort to derail the arbitration. You have to understand, this is sort of a David and Goliath type of a situation. It's a large insurance company. We're dealing with individual claimants here with very limited resources that— You've saved time for— Excuse me? You've saved time for rebuttal. You're fine with that. Thank you. Thank you. Good morning. May it please the court. Dan Bates, Decker Jones in Fort Worth. It's my privilege to argue on behalf of U.S. Health Group, the appellate. Our Supreme Court in the United States has been consistent that arbitration is a matter of consent, not coercion. That's the EEOC versus Waffle House case, citing the bold information sciences— So, is there any case that says that if it would just be more convenient to put this party in arbitration, they have to be in arbitration even if they didn't consent? No. In fact, Your Honor, Chief Justice Brister of the Texas Supreme Court has held just the opposite. I believe that's either in an N. Ray Kellogg or N. Ray Weekly. It's not what is more convenient, he wrote, but it is what the parties agreed to or did not agree to. The one thing I think is troubling, though, is that there could be differences, there could be conflicts in the outcome. I'm not saying that that's a basis for ordering arbitration. In fact, I don't think it is, probably, but I am a little bit concerned about that. Could you speak to it? Yes, I can. Do you understand what I'm saying? Yes, ma'am. We disagree with that. And, in fact, on page 36 of our brief, we have detailed sites to the record on appeal why we won't have any conflicts and why our case is independent, separate from, and not arbitrable under this agreement. But what if they determine that the defendants are entitled to the stock? Who is the they? If the court determines that their district court decides they're entitled to the stock, but the arbitrator can't get the value of the stock because they're not adhering to discovery. I'm wondering if that actually could play out. No, Judge Alrod, because SBIA never issued any stock. The SBIA agreement with the arbitration provision in it was executed and formed years after the equity incentive plan was enacted by U.S. Health Group. It was after individual agreements were made with various career agents to issue restricted common stock. Okay, I think we're getting into the merits, and I didn't want to get there. I was just trying to see a scenario where you could get conflicting things where you'd be in kind of a quagmire. Well, I think it has to go directly to your question, Judge Alrod, because you take an equity incentive plan for career agents years before that has neither the equity incentive plan nor any of the agreements for participation with each of these three agents and others has any arbitration agreement at all. Those parties did not agree to arbitrate anything with respect to the shares of stock. They're restricted shares of common stock on the back of certificates. They have repurchase. The stock was in SBIA? No, the stock is in U.S. Health Group. So what is the outcome that could happen in the SBIA? What are the two outcomes, you know, one party wins, the other party wins? Tell us that, because then we can see how that overlaps or doesn't. It's the difference between equity incentive, which is all U.S. Health Group stock, and commission bonus incentive under the agency agreement. In the SBIA cases, these parties, the plaintiffs get more or less bonuses based on different metrics. The outcome in the U.S. Health is they have to sell or don't have to sell their stock at different values. In addition to whether they qualified, because we're saying whether they're fair. But it has to do with the stock and what they're going to get or not get or sell back or not sell back, whereas over here in the SBIA, we're talking about the commissions, and they come into this agency agreement that hurt them and all that. That's over there in SBIA. That's correct. And the SBIA agreement in the record is terminable at will. So we don't frankly understand. Okay, but if they prevail over in SBIA, you're saying that that doesn't determine the stock issue one way or the other. And the reasons are on page 36, because SBIA agreements do not mention, adopt, or incorporate any of the provisions of the stock plan. SBIA agreements do not even mention the restricted common stock of U.S. Health Group. SBIA agreements don't govern, don't mention, don't incorporate, don't do anything with respect to the initial qualifications, any of the terms and conditions for the repurchase, anything having to do with value. The SBIA agreements do not contain any provisions for repurchase rights. That's all in the equity incentive and under the securities laws governing restricted common stock, and they don't have, the SBIA agreements don't have any provision at all for any of the mechanics of any of this stock purchase. There's just the thinnest, really, of relationship between the SBIA agreement and the claims that we're making in our lawsuit, which is that agents misrepresented their qualifications to initially have participated in the EIV and obtained the restricted shares of U.S. Health common stock, that after they misrepresented that and got the stock, thereafter, when the SBIA agreement was terminated, the right to repurchase is not in the SBIA agreement, it's in... Okay, but let's say that you're, so you've said they misrepresented, blah, blah, blah. Let's say you're wrong. Shouldn't they be allowed to counterclaim for the value of the stock in the U.S. Health case? The district court invited them to do that, and they failed to do that. Okay, because he says his counterclaim was dismissed. Well, it was, but here's why. He wanted a declaration that SBIA had unclean hands, among other things. And that's what's in the arbitration. They did. So saying, if you amend to take out the SBIA stuff, you can sue on your stock, so that the flip side of you, in other words, we didn't defraud you, we're entitled to this stock, it's now gone up in value, yadda, yadda, their side of the case, you say, can be presented in district court. The problem is that they added all this other stuff, and the district court told them to clean it up, and they didn't. That's your argument. Infinitely more important than what I say in the Fort Worth division, Judge McBride said that in his opinion, denying their petitions to compel arbitration. Really, Judge Haynes inviting the agents to make those counterclaims, but they didn't make those counterclaims. They made counterclaims about wanting to have Judge McBride adjudicate that an arbitration party did this or that, or the other had unclean hands, it wasn't even a part of the lawsuit, and Judge McBride said, I can't do that, so it was a 12B6 dismissal. What was the award of the arbitrator? The arbitration is pending. There has not been any award yet. No award yet? No. And I'm not representing any party to the arbitration, and so I don't know anything about any finding or why who should be in arbitration is arbitrable in the first instance. Whether there's an arbitration agreement, who ought to be in arbitration, that is a judicial determination. That's not for the arbitrable forum in our view. Well, sometimes that's for the arbitrable forum, but that question is not before us. Sometimes arbitration traders can determine the scope. I mean, there's a lot of authority on that, but we're not here to deal with that today. Well, I don't know about who should be in arbitration. Well, right, I know, but you said scope. You said in what they should be able to talk about. The arbitrators can do that. No, whether there's an agreement, who's a party to it, who ought to be in arbitration, and who shouldn't be. This court has held in Palmer Ventures, citing Westmoreland versus Sado, that compelling a non-signatory, a party that did not agree to arbitrate, to engage in arbitration is a rare case, a rare event. We contend that under this record, particularly with an abuse of discretion review for estoppel decisions that Judge McBride made, and his alter ego determination that is reviewed on a clearly erroneous standard, this record in no way supports that this is that rare case where U.S. health as a non-signatory ought to be compelled to arbitrate. The list of reasons why we are independent, why these issues are not inextricably intertwined, why our agreement with the equity incentive plan and the individual agreements with the agents are standalone and independent that are recited with detailed record sites at estoppel analyses, first of all, we're not seeking to enforce any part of the SBIA agreement in our lawsuit. So that prong or tentacle of direct benefits of estoppel is out the window. And you're not relying on their compliance or lack thereof with the SBIA agreement in the district court case? That's correct. Whether these agents are entitled to big residual bonuses under whatever production they had or didn't have under the SBIA agency agreement doesn't matter. So we're not seeking to enforce the SBIA agreement in any particular. We're not seeking any damages under that agreement. The damages that we are seeking is because we believe that there were misrepresentations and breaches of warranties by the agents of their qualifications to obtain the shares, the restricted shares in the first instance. And we believe that we're also entitled to declarations that in the event that there was a repurchase, that it was proper, that it was for an honest value, and that we're entitled to that declaration as well. So that doesn't have anything to do with the SBIA agreement. The type of benefit can't be tangential. It has to be direct. It has to be significant. It has to be substantial to qualify as a direct benefit that would support compelling a non-signatory to arbitration. Again, the SBIA agreement postdates the equity incentive program by a period of years. These restricted shares were offered, accepted, issued, and received before the SBIA agreement ever came into existence. Again, there is the, what the agents try to conflate is the bonus incentive under the equity incentive that is separate and apart from the SBIA agreement and predated it. They already got, they already had their shares. Again, nothing in the SBIA agreement deals with or even mentions U.S. health common stock. Now, I didn't know because it got in the record in the statement of claims in the arbitration, there seemed to be some claim that the agents were trying to make about SBIA stock. And so maybe there is something about SBIA stock, but that's not part of our lawsuit. We're a U.S. health group and we have- Well, that'd be kind of weird if SBIA is wholly owned by U.S. health. How would there be a claim about SBIA stock? I didn't say the claim was valid. All I said was it existed. All right. As part of what- You're just saying, you're hands off on that. And we believe that there's untoward conflation of all of this to try to make it appear that U.S. health ought to be roped into the arbitration. We don't believe that there's any equitable estoppel that would be in play here. As Justice Reveley aptly put it, we don't have an agreement to arbitrate. To the extent, however inadvertent, our demand that went out under SBIA letterhead, but- Now, SBIA did have its own stock. I don't claim to know that. I don't understand that it does. So far- I don't believe that it does. So far as you know, U.S. health is not filing any sort of claim that it had anything to do with any SBIA stock. That is correct. If, and I don't warrant that it does, but if SBIA has some stock that the plaintiffs referred to in their statement of, initial anyway, statement of claims in their arbitration, our lawsuit does not have anything to do with those shares if they exist. We don't believe that because the record is exquisitely clear that to the extent we may have inadvertently offered arbitration, the agents rejected that offer by their conduct. When they initiated arbitration, U.S. health group was not- And they said so. They said as much. Yes, they did. They told Judge Wilkinson in the 17th District Court on a discovery hearing, or at least in part a discovery hearing, because apparently in the arbitration they were trying to get discovery about U.S. health group, not SBIA, and in determining, trying to figure out who was going to be in the arbitration, who was not, to determine whether she needed to rule on that, there was, she allowed SBIA's counsel to ask Mr. Stock the following question, are you contending that U.S. health group is going to be compelled to arbitration with your clients? Mr. Stock's answer was, no, we didn't ask for that. It was not in the demand, meaning the agent's demand or initiation of arbitration. We're only asking for arbitration with SBIA, and the letters are unmistakably clear as that no demand was made to arbitrate with U.S. health group, and you know that. So Mr. Stock, I think in open court even tried to chastise Mr. Jackson a little bit about that, but now when presumably they figure out or think they have figured out that it might be to their advantage to arbitrate, after U.S. health's petitions were filed in the district court in Tarrant County and then removed, now they want to make it appear that U.S. health group was an arbitration party from the jump. Nothing could be further from the truth on that, and we think that this court ought to hold these agents through their lawyer to the representations made to Judge Wilkinson in the 17th district court in that hearing. Therefore, we don't see any basis upon which there would be any equitable estoppel of any kind that would compel U.S. health to arbitrate. The alter ego, that's clearly erroneous standard. There's just no evidence of the record that were not separately maintained as entities. This business about an insurance holding company running the show of its agency subsidiary, what was not, now, first of all, that was not presented in the trial court, so we don't think that this court would properly consider that. But if the court is so inclined, the situation is that the insurance code defines a holding company as having control over an insurer, insurers are defined as people who write and underwrite insurance policy. SBIA is not an insurer. SBIA is a marketing sales agency organization, so the fact that we freely admit that we're an insurance holding company is an apposite to any and of no help to the agents on that issue. The other thing is that this disruption and that we have tried to disrupt the arbitration and done that fraudulently, intentionally, and that litany of allegations, that's been held by the Dallas Court of Appeals and N. Ray Merrill Lynch, that just because a party wants to sue, particularly when they've not agreed to arbitrate the matter, can't be some sort of a disruption through which one wanting to compel such a party to arbitrate, to bootstrap their way into it. The agreement was for Texas law to apply. We agree with Judge McBride that it really doesn't matter whether federal law or state Texas law applies because the Texas Supreme Court has expressly tried to make the federal cases and the state cases conform. Absent any questions, I thank very much for the privilege to appear here today for my client and ask that in all respects that Judge McBride's denial of the petitions to compel arbitration be affirmed. The appellee concedes that the complaint filed in the district court seeks a declaration that the repurchase of the stock under the EIP of U.S. Health Stock was proper. The arbitration concerns a claim in large part, it's about 80% or more of the total damages, that the repurchase of the stock was improper. So how could there not be inconsistent results? If the arbitrators find that the repurchase was improper and the district court finds that it was proper, there would be an invocation of legal chaos. The comment was made that Judge McBride didn't dismiss the action because we brought a claim based upon damages for a wrongful repurchase of U.S. Health Stock, that's simply untrue. That was the basis of our claim. We didn't seek any kind of declaration that the matter was arbitrable. That's simply not the case. It's nonsensical. The record is clear as to what happened in the lower court vis-a-vis the dismissal. And Judge McBride said that the issue of the value and damages of the repurchase of U.S. Health Stock was an arbitrable matter. So he said both, he feels strongly both ways about arbitrability of this matter. He feels on the one hand, the issue is arbitrable, and on the other hand, the U.S. Health shouldn't be compelled to arbitrate. The standard of review here is de novo. This is an action where no evidence was taken by the court. The court did not have a unique perspective in viewing the witnesses. You have the same record that Judge McBride has. It's a classic de novo case. The argument that the U.S. Health Employee Incentive Plan and the independent marketing agreement with SBIA were completely independent and separate is simply an argument without any merit. Why would a company give another company an incentive plan that was unrelated to the marketing agreement? Why would a company claim that they had the right to buy back that stock when the relationship between our clients and SBIA terminated, and then turn around and say, but the two agreements are unrelated, makes absolutely no sense whatsoever. U.S. Health benefited by our clients' efforts as independent marketing agents. Our clients were incentivized to work for SBIA and U.S. Health through the Employee Incentive Plan, and they were wrongfully terminated, and the stock was bought back by U.S. Health by virtue of actions taken by SBIA. So the interrelationship with a company creates a myriad of reasons why, under direct benefits estoppel, equitable estoppel, and alter ego theories, why the non-signatory U.S. Health should be compelled to arbitrate. The arbitrators found that they're necessary parties, and that the arbitration, in order to be meaningful, should include U.S. Health, and this court should further the broad public policy which favors arbitration in such circumstances, and give our clients the benefit of the agreement that they bargained for. Why U.S. Health would bring an action in 2015 to claim that stock that they issued under an Employee Incentive Plan in 2006 was based upon misrepresentations made by our clients with whom they've had business dealings with for over nine years punctuates the point. They did that simply to derail the arbitration, and that's simply something that should not be allowed. This is one of those circumstances where intertwined companies, having intertwined contracts, deriving benefits from one another, should be compelled to arbitrate the entire dispute in one form. That's what arbitration is all about, and I respectfully urge the court to reverse the decision below. Thank you. Thank you.